[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
 Facts and Procedural History
This matter comes before the court on the March 21, 2000 motion filed by the non-party movants, local and national newspaper publishers, CT Page 8019-t seeking copies of the filed documents in the above captioned case, including but not limited to the affidavit in support of the arrest warrant. Although not specified in their brief, at the April 4, 2000 hearing on this motion, the movants expanded their request to include copies of transcripts of subsequent proceedings in this matter. In addition, the movants clarified at the hearing that they would be endeavoring to further disclose any documents received to the public at large as that is the nature of the movants' business trade. The State of Connecticut does not object to the media being given access to the documents and records of the proceedings that are before this Court. Although characterized as "not necessarily an objection" the respondent's position, as stated by counsel at the hearing, was not one of consent or agreement to the release of the arrest warrant affidavit in its existing format, since it contains "allegations by people who are unnamed."
The thirty-nine year old respondent has been referred to the Superior Court for Juvenile Matters as a delinquent due to his age (fifteen) on or about October 30, 1975 when the underlying alleged act or acts occurred. During the ensuing quarter century, particularly in the past year, the case has been the subject of pervasive media coverage. On March 10, 2000, this court granted the movants' motion for access to the arraignment and subsequent proceedings in this matter. The reasonable cause hearing which will determine whether this matter will be transferred to the adult court is scheduled to begin on June 20, 2000.
 Discussion
The rule concerning disclosure of juvenile records in effect on or about October 30, 1975, Connecticut General Statutes § 17-579 (Rev. to 1975), provided: "The juvenile court shall keep records of all cases brought before it, and any record or any part thereof, including studies and reports by probation officers, social agencies and clinics, shall be confidential and for the use of said court, and open to inspection or disclosure to any third party only upon order of said court, except that such records shall be available to the attorney representing the child, his parents or guardian. Any record or any part thereof forwarded by the juvenile court or any of its employees to any persons, governmental and private agencies, and institutions, shall not be disclosed, directly or indirectly, to any third party save upon order of said court."
The movants largely rest their assertion for disclosure on the March 10, 2000 decision of this Court to allow access to the proceedings in this case, equating access to the proceedings as entitlement to access to the otherwise confidential records. Each form of access, however, is CT Page 8019-u governed by separate statutory provisions. If the legislature had intended to allow anyone with access to the proceedings to be allowed access to the court records, it would have been easy for it to say so in the text of the statute itself. See In the Matter of the Welfare ofR.L.K., Jr. v. Minnesota, 269 N.W.2d 367, 370 (Minn. 1978).
The fundamental objective of statutory construction is to ascertain and give effect to the apparent intent of the legislature. "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) State v. Metz, 230 Conn. 400, 409, 645 A.2d 965 (1994). "[W]hen the language is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) State v.Luzietti, 230 Conn. 427, 433, 646 A.2d 85 (1994). More significantly, "[t]he legislature is presumed to be aware and to have knowledge of all existing statutes and the effect which its own action or non action may have on them." State v. King, 249 Conn. 645, 682, 735 A.2d 267 (1999).
Over the past thirty years, since enactment of Connecticut General Statutes § 17-57a in 1969, our legislature has revisited the issue of the confidential nature of juvenile records in numerous legislative sessions, expanding and finetuning the circumstances under which disclosure may be permitted. Nevertheless, during that time period, the legislature has not seen fit to equate access to the court proceedings asaccess or entitlement to the court records. Despite substantial changes in the laws augmenting access to confidential juvenile records, particularly those enacted pursuant to Public Act 95-225, which supplied the bulk of our current provisions, the legislature has expressed a clear, ongoing intent that in a potential transfer case, such as the present one, the information remains confidential until a transfer to the adult court has occurred. "Although the court has some residual discretion to order disclosure of records in circumstances not precisely addressed by the statute, its discretion must be informed by the policies the statute is intended to advance." In Re Sheldon G., 216 Conn. 563,584, 583 A.2d 112 (1990). The focus of the evolution of change in access to juvenile records has centered around victims' rights and the intergovernmental agency exchange of information, not unrestricted public access. The legislature's frequent reconsideration of the confidentiality issue and the resulting narrow purposes of the exceptions carved out, leads this court to conclude that the legislature never intended the CT Page 8019-v unqualified, full public access requested here. Our courts have had numerous occasions to address the confidentiality of juvenile records and their disclosure. See In Re Amy H., 56 Conn. App. 55, 742 A.2d 372
(1999); In Re Sheldon G., 216 Conn. 563, 583 A.2d 112 (1990); In ReJuvenile Appeal (85-AB), 195 Conn. 303, 488 A.2d 778 (1985); State v.Thergood, 33 Conn. Sup. 599, 363 A.2d 1121 (1976); Tracy v. Johnson,156 Conn. 630, 239 A.2d 477 (1968); In Re Application of Roman v. StateWelfare Dept. 26 Conn. Sup. 316, 222 A.2d 577 (1966); In Re James B.,Jr., 45 Conn. Sup. 315, 714 A.2d 735 (1998); In Re Jessica, Superior Court for Juvenile Matters, judicial district of Middletown (April 30, 1999, Goldstein, J.T.R.); In Re Tabatha B., Superior Court for Juvenile Matters, judicial district at New Britain (September 15, 1999, Shapiro,J.) (25 CLR 421); Collins v. Carbee, Superior Court, judicial district of New London at New London, Docket No. 529623 (June 28, 1995, Hurley, J.) (15 CLR 66).
From these decisions, it is clear that there is a presumption that juvenile records remain confidential even after the subject has reached the age of majority. Moreover, absent consent, the moving party must show both a compelling need and that the information being sought is not otherwise available. Not only have the movants failed to demonstrate a compelling need, they have also conceded that at least some of the information they seek will be available by virtue of the media and public access to the proceedings.
 Conclusion
For all the reasons discussed above, the motion for access to and/or copies of documents in the court file in this matter is denied. The proceedings are open to the press and public and transcripts of same shall be available in the same manner as any other open proceeding.
Dennis, J.