TRACY A. MARLOW *v.* SARAH STARKWEATHER
(AC 29065)

DiPentima, Robinson and Schaller, Js.

Argued December 8, 2008—officially released March 31, 2009

---

*Tracy A. Marlow*, pro se, the appellant (plaintiff).

*Ronald E. Kowalski II*, with whom, on the brief, was *Keenan M. McMahon*, for the appellee (defendant).

*Jocelyn B. Hurwitz*, for the minor children.

*Opinion*

PER CURIAM. The plaintiff, Tracy A. Marlow, appeals from the judgment rendered in favor of the defendant, Sarah Starkweather, on her postjudgment motion preventing the plaintiff from displaying certain photographs in any residence in which the parties' children reside or visit. On appeal, the plaintiff raises five issues relating to this judgment.[1] We affirm the judgment of the trial court.

The parties married on April 18, 1982, and have three children born of the marriage. On November 17, 2004, the court, *Abery-Wetstone, J.*, dissolved the marriage and issued various financial orders. The court found that the custody and visitation agreement of the parties was in the best interests of the minor children and incorporated it by reference. On December 15, 2004, the defendant filed a motion to prohibit the plaintiff from storing or keeping guns in his home. At the time

[1] The statement of issues, as set forth in the plaintiff's brief, provides: "(1) Should the Superior Court provide injunctive relief to parties that are in agreement? (2) Should the Court use its injunctive powers to control a former spouse on behalf of the other former spouse? (3) Should the Superior Court issue an Order effectively terminating a parental visitation without the participation of the Children and/or the Children's attorney? (4) Should the Superior Court issue an order that restrains the Free Speech Rights of a citizen prior to the citizen exercising those Free Speech Rights? (5) If the Appellate Court decides to vacate the Order, should the Order be vacated Nunc Pro Tunc?"

of this motion, the plaintiff had physical custody of the oldest child, and the two other children would visit. The motion further sought an order prohibiting the plaintiff from hanging photographs of nude women on the walls of any home in which the children resided or visited with him.

The court, *Black, J.*, granted the motion with respect to the issue of having guns in the home and stated that it needed a "picture of [the] paintings to determine appropriateness." On April 25, 2005, the parties reached an agreement that was entered as an order of the court on the same date. This agreement provided in relevant part: "The parties agree that neither party will permit or display any photographs, pictures or art of naked [women] on the walls or furnishings of any residence in which the children reside or visit with either parent."

On August 21, 2006, the plaintiff moved to vacate, nunc pro tunc, the order with respect to the issue of the display of photographs, pictures or art of naked women on the ground that it violated his first amendment rights, as well as "other laws." The court, *Tierney, J.*, granted this motion on June 6, 2007.

On April 30, 2007, the defendant filed a motion for an order that the plaintiff "not display, in any residence in which the children reside or visit with him, four photographs . . . one [of which] is the defendant in the nude . . . [and] the remaining three photographs are of the plaintiff's first ex-wife and former girlfriends." After conducting an evidentiary hearing, the court, *Tierney, J.*, granted the defendant's motion on July 17, 2007. This appeal followed.

The plaintiff has set forth a variety of claims with respect to the court's July 17, 2007 order.[2] He has failed, however, to set forth the applicable standard of review

---

[2] See footnote 1.

for any of these claims. See Practice Book § 67-4 (d). Furthermore, he has failed to cite any case law, statute or treatise for four of his claims. For the remaining claim alleging that the court's order constitutes a prior restraint, he merely has set forth the definition of that term and certain general legal principles. He failed to apply these general principles to the facts of the present case. In short, he has failed to brief any of his claims adequately.

Our Supreme Court has stated that appellate courts "are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004); see also *Wilson* v. *Jefferson*, 98 Conn. App. 147, 166, 908 A.2d 13 (2006). Moreover, we have explained: "[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Elia* v. *Elia*, 99 Conn. App. 829, 838, 916 A.2d 845 (2007); see also *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 711, 900 A.2d 498 (2006); *Verderame* v. *Trinity Estates Development Corp.*, 92 Conn. App. 230, 232, 883 A.2d 1255 (2005). The plaintiff's brief is devoid of any legal analysis with respect to his

arguably innovative constitutional claims; accordingly, we cannot reach the merits of his claims and deem them abandoned.

We are mindful of the plaintiff's pro se status, both before the trial court and on appeal.[3] "This court has always been solicitous of the rights of pro se litigants and, like the trial court, will endeavor to see that such a litigant shall have the opportunity to have his case fully and fairly heard so far as such latitude is consistent with the just rights of any adverse party. . . . Although we will not entirely disregard our rules of practice, we do give great latitude to pro se litigants in order that justice may both be done and be seen to be done. . . . For justice to be done, however, any latitude given to pro se litigants cannot interfere with the rights of other parties, nor can we disregard completely our rules of practice." (Internal quotation marks omitted.) *Shobeiri* v. *Richards*, 104 Conn. App. 293, 296, 933 A.2d 728 (2007); *Wasilewski* v. *Machuga*, 92 Conn. App. 341, 342, 885 A.2d 216 (2005); *Emerick* v. *Kuhn*, 52 Conn. App. 724, 756 n.22, 737 A.2d 456 ("[e]ven pro se litigants, however, must provide this court with citations to rules of law that support their arguments. See *Cersosimo* v. *Cersosimo*, 188 Conn. 385, 394, 449 A.2d 1026 [1982]; *Connecticut Light & Power Co.* v. *Kluczinsky*, 171 Conn. 516, 520, 370 A.2d 1306 [1976]; *Higgins* v. *Hartford County Bar Assn.*, 109 Conn. 690, 692, 145 A. 20 [1929]"), cert. denied, 249 Conn. 929, 738 A.2d 653, cert. denied sub nom. *Emerick* v. *United Technologies Corp.*, 528 U.S. 1005, 120 S. Ct. 500, 145 L. Ed. 2d 386 (1999).

The judgment is affirmed.

---

[3] We note, however, that the trial court found that the plaintiff had received his law degree and had practiced law for several years. The plaintiff "testified [that] he gave up his Connecticut law license sometime between November, 2002, and June, 2003, to avoid paying the $450 yearly occupational tax and client security fund fee."